```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
STEVEN SARBOU,

                     Plaintiff,          07-CV-6033 CJS

         v.                               **DECISION**
                                                        **and ORDER**

JO ANNE B. BARNHART
Commissioner of Social Security

                     Defendant.
_____

## **INTRODUCTION**

     Plaintiff Steven Sarbou ("Sarbou" or "Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case was erroneous because it was not supported by substantial evidence in the record.

     Both parties move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner claims that the ALJ's decision was supported by substantial evidence whereas the plaintiff claims that it was not. This court finds that the evidentiary record is unclear and incomplete as to the ALJ's findings required at step one of the process in determining whether the claimant was engaging

in substantial gainful activity in accordance with 20 C.F.R. 404.1527(b) and 416.920(b), and therefore the case is remanded for further inquiry by the ALJ in accordance with this decision.

## BACKGROUND

On December 31, 2002, Plaintiff Steven Sarbou applied for DIB and SSI payments claiming that he became disabled on August 26, 2002 due to bi-polar disorder (Tr. 55). Sarbou was 33 years-old at the time of his application (Tr. 64).

The Social Security Administration ("SSA") initially denied Sarbou's application and he thereafter requested an administrative hearing which was conducted by ALJ Robert W. Young on March 1, 2006 (Tr. 307-346). The ALJ found Sarbou not to be disabled on July 31, 2006 (Tr. 11-20).

Sarbou appealed the ALJ's decision to the Social Security Appeals Council on September 21, 2006 (Tr. 8, 303-306) The Appeals Council denied his request for review on December 16, 2006 (Tr. 4-6). On January 22, 2007 the plaintiff filed this action.

## DISCUSSION

**I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if

those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may

be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A District Court should order payment of Social Security disability benefits only in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Services, 705 F.2d 638 at 644 (2nd Cir. 1983). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. However, where the ALJ has failed to sufficiently develop the record to ensure a proper disability determination, remand is appropriate. Butts v. Barnhart, 388 F.3d 377 at 386 (2md Cir. 2004). "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further findings is "particularly appropriate." Rosa v. Callahan, 168 F.3d 72 at 83 (2nd Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34 at 39 (2nd Cir. 1996). Because this court finds that the ALJ failed to sufficiently develop the evidentiary record as to Mr. Sarbou's disability, the case is remanded for further proceedings.

**II. STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

   (i)    if the claimant is performing substantial gainful work, he is not disabled;

   (ii)   if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled;

   (iii)  if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

   (iv)   if the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled;

   (v)    even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). In this evaluation process, each of the five steps is followed in sequential order. Id. If the determination of disability can occur at a step, then the determination is made and the analysis ends. Id. If the determination cannot be made at a particular step, then analysis continues through the next step. Id.

The ALJ in this case performed the required five-step evaluation and determined: (i) that the plaintiff had not engaged

in substantial gainful employment since the onset of his disability; (ii) that the plaintiff's affective disorder and personality disorder were considered "severe" under §§ 404.1520(c) and 416.920(c); (iii) that the plaintiff's conditions - either alone or in combination - did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) that the plaintiff was able to perform his past relevant work as a janitor and as a cannery worker; and (v) that the plaintiff had the residual functional capacity to perform simple repetitive work in a low contact setting (Tr. 13-20).  Because the ALJ concluded that the plaintiff could still perform his past relevant work as a cannery worker or janitor, and that he had the residual functional capacity to perform simple repetitive work in a low contact setting, the ALJ determined that the plaintiff was not disabled (Tr. 20).  The flaw in the ALJ's analysis occurred at the first step of the disability determination process.  The ALJ failed to sufficiently develop the record in order to make an accurate determination of whether Mr. Sarbou was substantially gainfully employed.

### III.  ANALYSIS

The first step of the disability evaluation process requires a determination, based on the evidence in the record, of the claimant's work activity.  The regulation states that "if you are doing substantial gainful activity, we will find that you are not

disabled." 20 C.F.R. §§ 404.1520(a)(4)(i). The statute also clearly states that "[i]f you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 C.F.R. §§ 404.1520(b). It is this step of the process in the ALJ's decision which is deficient.

As to the disability inquiry, the ALJ stated that "the claimant's earnings record is not indicative of presumed gainful activity" (Tr. 14). In substantiating this statement, the ALJ points to Exhibit 4D, Mr. Sarbou's Social Security Informational Earnings Record Estimate ("ICERS Report"), which shows that Mr. Sarbou earned $9,686.35 in 2002, revealing a decrease in earnings as compared to his 2001 earnings of $12,570.60 (Tr. 14). Most notably, the ICERS Report reflects no earnings for the years of 2003, 2004, or 2005. Id. This part of the record would appear to support the ALJ's contention that Mr. Sarbou did not engage in "presumed" substantial gainful activity during the closed period for which he seeks recovery. However, Mr. Sarbou's own testimony and the testimony of attending Doctors and nurses belie this contention.

The record is replete with evidence indicating Mr. Sarbou's employment which needs to be evaluated in determining whether it constitutes "substantial gainful activity" during the closed period for which he seeks recovery from September 1, 2002 through

September 7, 2005. On the "Claimant's Statement When Request For Hearing is Filed and the Issue Is Disability", Mr. Sarbou states that he performed sewing duties for Haarstick Sailmakers during 2003, and that he was a laborer for Great Lakes Boat Repair during 2003 (Tr. 92). Lyn Sullivan, N.P., states in her report dated September 13, 2002 that Mr. Sarbou is working up to fifteen hours a week and "owns his own home" with "[two] house mates who rent from him" (Tr. at 168-169). Karen Wiener, M.D., states that Mr. Sarbou was working in landscaping, and "working on some independent projects" in her report dated April 14, 2004 (Tr. 267-268). On May 12, 2004, Dr. Wiener states in her report that Mr. Sarbou is "landscaping daily" and is "working more" (Tr. 276). On May 26, 2004, Nurse Sullivan states that Mr. Sarbou has been "[w]orking on some independent project," he is "[w]orking on starting his own landscape business," and has "borrowed money and bought some equipment" (Tr. 277).

On June 23, 2004, Dr. Wiener reports that Mr. Sarbou is "landscaping" (Tr. 279). On the same date Lyn Sullivan, N.P. states the following regarding Mr. Sarbou:

> *"Bought a business-another business' clientele. Now cuts 50 lawns per week and works every day-sometimes does some evening work either maintaining equipment or talking with clients. He has hired a helper which decreases his stress (and his income) and makes the jobs more enjoyable as they*

> *often work together. Discusses insurance and risk issues with owning a business. He is slowly working on increasing his income so he can afford the usual business expenses. He cannot afford them now and is in debt (Tr. 280)."*

Again on August 4, 2004, Lynn Sullivan reiterates the previous statement and adds that Mr. Sarbou now "[w]orks from early morning to late afternoon (Tr. 282)." On September 22, 2004 Lyn Sullivan reports that Mr. Sarbou is "beginning to be successful at business and slowly paying off debts of equipment etc. (Tr. 286)." On October 6, 2004, Dr Wiener states that Mr. Sarbou is working 30 hours per week (Tr. 289). Nurse Sullivan also states on December 15, 2004 that Mr. Sarbou "[h]as own landscaping business", but that "business is slow because cannot do work in winter (Tr. 291)." On May 9, 2005, Nurse Sullivan report that Mr. Sarbou "has own landscaping business" and is [w]orking hard as this is the season work starts up (Tr. 293)."

Despite this uncontroverted evidence in the record, Mr. Sarbou gave very different testimony at his hearing before the ALJ. Mr. Sarbou stated that during the closed period from September 2002 through September of 2005 his symptoms prevented him from working (Tr. 325). He stated that during the same period he was only able to motivate himself and get out of the house and function two days a week (Tr. 327). When directly asked by the ALJ "Mr. Sarbou, from

the period of 9 of '02 til 9 of '05, were you able to do any work?", Mr. Sarbou answered "No" (Tr. 328).

The conflicting nature of the record in this case emphasizes the necessity of a remand for further proceedings. The record is full of further discussion and mention of Mr. Sarbou's work activity during the closed period. The ALJ recognized the importance of this work activity in terms of "the claimant's retained work function and his credibility" (Tr. 12-13). However, this recognition was discounted in light of Mr. Sarbou's earnings record as described in the ICERS Report (Tr. at 13). The ALJ found that Mr. Sarbou admitted working during the closed period, but then discounts this fact in the light of the ICERS Report. Clearly the extent and nature of the work performed by Mr. Sarbou, even if not reported as Social Security earnings, is vital to the inquiry of Mr. Sarbou's disability. If Mr. Sarbou was indeed engaging in substantial gainful activity during the closed period, he cannot be disabled within the meaning of the Act. The fact that Social Security has no record of earnings for Mr. Sarbou during this period does not foreclose the possibility that he may nonetheless have been substantially gainfully employed, and this invites further inquiry by the ALJ upon remand.

## CONCLUSION

This court finds that the ALJ's decision does not sufficiently address the question of the Plaintiff's substantial

gainful employment in determining his claim for disability.   In order to develop a complete record, the case is hereby remanded for further inquiry as to whether the plaintiff engaged in substantial gainful employment during the applicable claim period.

   ALL OF THE ABOVE IS SO ORDERED.


                                     s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                 United States District Judge


Dated:    Rochester, New York
          October 12, 2007